## PARK TOWERS ASSOCIATES, Ltd. v. TAX ASSESSOR.
### No. 66-C-11322.
Circuit Court, Dade County.

December 14, 1967.

Irwin J. Block, Miami, for plaintiffs.

Thomas C. Britton, County Attorney, and Stuart Simon, Assistant County Attorney, for defendants.

GRADY L. CRAWFORD, Circuit Judge.

*Final judgment:* This cause came on to be heard by the court on final hearing on November 16, 1967. The court reviewed the amended complaint of the plaintiffs seeking a partial cancellation of the 1966 tax assessment on the improved real property involved in this cause, the answers of defendants Robert Overstreet, as tax collector of Dade County, W. Wirt Culbertson, as tax assessor of Dade County, and Fred O. Dickinson, Jr., as comptroller of the state of Florida, and the motion for judgment on the pleadings filed by the aforesaid defendants. The court also heard and considered the testimony of F. Kirby Clark, Paul L. McCarthy, Olin L. Green, Irving Epstein, and Martin Fine, witnesses called by the plaintiffs, and of Jesse Jackson, the single witness called by the defendants. The court examined the various exhibits placed in evidence by the parties and carefully considered the arguments advanced by counsel for the contending litigants. Being otherwise fully advised in the premises, the court makes the following findings of fact —

1. Plaintiffs were at all relevant times the owners of a 13 story apartment building, known as the Park Towers Apartments, and the land on which it stood in the city of Miami. Construction on this apartment building was commenced during December of 1964, and was concluded during January of 1966.

2. On January 1, 1966 the construction of all of the exterior and of a substantial portion of the interior of the apartment building had been completed. A photograph taken on December 29, 1965 and offered in evidence shows the exterior of the building wholly complete on that date. Insofar as the interior was concerned, temporary certificates of occupancy were issued by the building department of the city of Miami for the lobby portion of the ground floor and the first four floors of apartments above the ground floor on December 15, 1965. On December 28, 1965 temporary certificates of occupancy were issued for the fifth and sixth floors of apartments and for three of the 12 apartments on the seventh floor. This represented all the temporary certificates of occupancy that had been issued by the city of Miami on or before January 1, 1966, the date of the ad valorem assessment.

3. Insofar as physical construction was concerned, many portions of the five remaining floors of the building were complete or substantially complete on January 1, 1966. Although consid-

erable finishing up was still required on that date in certain portions of the upper floors of the building where corridors were partially blocked by construction materials, electricity had not been turned on, door locks and knobs were not yet fitted, toilet seats had not yet been placed, certain plumbing fixtures and kitchen cabinets had not been installed, and some of the tile flooring and ceiling had not been laid, many of the individual apartments on the upper floors were complete or on the verge of completion on January 1, 1966. On January 14, 1966, the eighth, ninth and tenth floors of apartments were granted temporary certificates of occupancy. On January 19, 1966 the seventh floor certificate was expanded from three apartments to the entire floor of 12 apartments. On January 28, 1966 temporary certificates were issued to the eleventh and twelfth floors, and the final total certificate of occupancy for the building was issued on February 2, 1966.

4. The original assessment placed on the property involved was $77,650 on the land and $917,650 on the building, a total of $995,300. The assessor reviewed this assessment on the instruction of the board of county commissioners of Dade County, sitting as a board of equalization, and recommended a reduction in the assessment on the building to $780,000. This reduction, which was approved by the board of county commissioners, represented 85 percent of the original building assessment, and was probably recommended by the assessor because he believed the building to be approximately 85 percent complete.

5. The court finds and determines that the total construction on the building was approximately 85 percent complete on an over-all basis on January 1, 1966. The court also finds that 6¾ floors, or 52 percent of the building, were legally tenantable on January 1, 1966. This is because temporary certificates of occupancy for 6¾ floors had been issued by the building department of the city of Miami, and thus were deemed legally tenantable by the said authority on that date. The court also finds that approximately 8½ floors, or 65.4 percent of the building, were complete or substantially complete from the standpoint of physical construction on the assessment date. This is because the court deems eight floors of apartments, or 96 apartments, and the entrance foyer and lobby, which comprise about half the ground floor, were physically complete or substantially complete on the assessment date.

The plaintiffs took the position that there should be no 1966 assessment at all placed on the uncompleted building. This position is founded on §193.11 (4), Florida Statutes, which states —

"All taxable lands upon which active construction of improvements is in progress and upon which such improvements are not substantially completed on January 1 of any year shall be assessed for such year, as unimproved lands. Provided, however, the provisions hereof shall not apply in cases of alteration or improvement of existing structures."

The defendants admit that they disregarded this statutory section in assessing the subject property for 1966. They contend that this statutory section upon which the plaintiffs rely is unconstitutional and should be disregarded; they therefore assessed the building at 85 percent of its completed value, since the building was approximately 85 percent complete on the date of assessment, January 1, 1966. In support of their position the defendants advanced the following three arguments —

a) The removal of all assessments from partially completed buildings in the course of construction creates a statutory exemption. Since the legislature may only enact exemptions for one or more of the purposes set out in article IX, section 1, of the constitution of Florida, and since this particular exemption serves none of those purposes or objectives, this statutory exemption contravenes the constitution and is beyond the power of the legislature to lawfully enact.

b) The statute lacks sufficient guides or standards or criteria to meet the requirements of due process of law. Whether a building is substantially complete when 85 percent complete, or 90 percent complete, or 95 percent complete is not stated in the statute and thus is left to the varying interpretations of the 67 county assessors. The defendants maintain this to be incompatible with the twin constitutional requirements of equality and uniformity.

c) The treatment meted out to certain persons who are constructing buildings is unfair and discriminatory when compared with the treatment accorded other persons in the course of constructing buildings. A man who completes 10 of 13 floors in a building would pay no ad valorem tax on the building under the interpretation urged by the plaintiffs, while a man who was building a complex of 13 single story buildings side by side and who had completed 10 of those buildings would pay tax on the 10 completed single story buildings. The defendants contend that such a classification is unreasonable, capricious, discriminatory, and not in accord with the concept of equal protection under the laws set out in the fourteenth amendment to the federal constitution.

The court holds that the position urged by the plaintiffs, wherein they seek to have no assessment at all imposed on a 13 story building only a few weeks away from total completion, would produce an unconstitutional result for one or more of the reasons advanced by the defendants. However, the court is extremely reluctant to declare a state statute void and unconstitutional without first attempting to find some reasonable interpretation of the statute that would render it compatible with our organic law. Mindful that it has a duty to strive for an interpretation of the statute that will produce a constitutional result, the court adopts and accepts that interpretation urged by the attorney general of Florida in AGO 061-177. Therein the attorney general adopts what the court, for lack of a better name, will designate as the unit principle. Under this principle a building under construction will be envisaged as containing a number of individual or separate units, in some cases individual apartments, and in other cases individual offices or office suites or store units or entire floors. Under this interpretation of the statute which the court believes meets constitutional standards, the assessor will assess only those individual units or portions of a building under construction that he deems complete or substantially complete on the assessment date.

Having adopted the unit principle advanced by the attorney general, the court must further determine whether the criterion for determining the substantial completeness of a unit in a partially complete building is legal tenantability or substantial physical completeness. The court adopts the latter criterion with the realization that an apartment unit in a building may be complete save for the switching on of electric power or the installation of the toilet seats, by custom of the building trade the last act usually performed before application is made for a certificate of occupancy. In such circumstances the apartment is not legally tenantable, but it would produce an absurd result to say that it was not substantially complete. The court therefore adopts substantial physical completion as the criterion or standard to be utilized in determining whether there is or has been substantial completion as prescribed by the statute. It appears to the court that if an individual apartment or office or suite or store is physically complete to the extent of 85 percent or more, it should be deemed substantially complete under the statute on the assessment date.

In the circumstances of the instant case the court deems eight floors of apartments, or 96 apartments, and the entrance foyer and lobby, which comprise approximately half the ground floor,

to be substantially complete on the assessment date. This comprises 65.4 per cent of the building on which the court rules that $600,143 is the proper assessment. The uncontested land assessment of $77,650 makes the total 1966 assessment on the property $677,793.

The defendant tax collector is hereby ordered to render a tax bill to the plaintiffs based on the above assessment within seven days of the entry of this final judgment. Such tax bill shall reflect county taxes due in the amount of $15,429.96 and city of Miami municipal taxes due in the amount of $10,702.35. Credit for the sums already paid to the defendant tax collector in the amounts of $1,767.70 for county taxes and $1,226.09 for municipal taxes shall also be reflected on the tax bill, which will thus show a balance of $13,662.26 due and owing for 1966 county taxes and $9,476.26 due and owing for 1966 city of Miami municipal taxes.

Because the suit was brought in good faith on a constitutional issue unresolved by a court of record, the court will not impose the interest or penalties on the delinquent taxes prescribed by §193.51, Florida Statutes, but will impose interest at the legal rate only on the balances due and owing. Such interest shall be imposed until November 16, 1967, the date of final hearing in this cause. Such interest shall be reflected on the tax bill in the amounts of $546.49 for county taxes and $379.05 for city taxes. The plaintiffs shall have seven days to make total payment from the date of receipt of the aforesaid tax bill prepared by the defendant tax collector. If not paid within that time, then interest and charges shall commence pursuant to §193.51, Florida Statutes.